**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WILLIAM T. DAVIS                          \*

       Plaintiff                        \*

    v.                                    \*        Case No.: 1:05CV01358

GABLES RESIDENTIAL/                       \*        Court date: 9/6/07 Status Hearing
H.G. SMITHY

                   \*        Judge Colleen Kollar-Kotelly

       Defendant

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT'S REVISED MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

     Gables Residential Services, Inc., Defendant, by KARPINSKI, COLARESI & KARP

and DANIEL KARP, its attorneys, submits the following memorandum of points and

authorities in support of Defendant's Revised Motion for Summary Judgment.

**TABLE OF CASES**

\* <u>Adams v. George W. Cochran & Co.</u>,597 A.2d 28(D.C. 1991)  . . . . . . 21, 22, 23, 24, 26, 29

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

<u>Banks v. District of Columbia</u>, 377 F. Supp. 2d 85 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . 20

<u>Bowie v. Gonzales</u>, 433 F. Supp. 2d 24 (D.D.C. 2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . 25

\* <u>Carl v. Children's Hosp.</u>, 702 A.2d 159 (D.C. 1997) . . . . . . . . . . . . . . 21, 22, 23, 24, 26, 29

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

<u>Fingerhut v. Children's Nat'l Med. Ctr.</u>, 738 A.2d 799 (D.C. 1999) . . . . . . . . . . . . . . . . . 23

<u>Greene v. Dalton</u>, 164 F.3d 671 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>Laningham v. U.S. Navy</u>, 813 F.2d 1236 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 18

* <u>Liberatore v. Melville Corp.</u>, 168 F.3d 1326 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . 23, 26

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986) . . . . . . . . . . . . 18

<u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101(2002) . . . . . . . . . . . . . . . . . . . . . 19

<u>Palmer v. Barry</u>, 894 F.2d 449 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

* <u>Taylor v. Washington Metro. Area Transit Auth.</u>, 109 F. Supp. 2d 11
(D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 25, 29, 30

* <u>Wallace v. Skadden, Arps, Slate, Meagher & Flom, et al.</u>, 715 A.2d 873
(D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 28, 29, 30

<u>Warren v. Coastal Int'l Secs., Inc.</u>, 96 Fed. Appx. 722 (D.C. Cir. 2004) . . . . . . . . . . . . . . 25

## TABLE OF OTHER AUTHORITIES

Fed.R.Civ.P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

12 U.S.C. §1432(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

15 U.S.C. §2651(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

29 U.S.C. §660(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

42 U.S.C. §2000(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

29 C.F.R. §1601.74 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## INTRODUCTION

The *pro se* Complaint of William T. Davis (hereinafter "Plaintiff") against Gables

Residential Services, Inc. (hereinafter "Gables") appears to include federal Title VII claims

and District of Columbia common law claims based on alleged retaliation:

(1)    for filing an Equal Employment Opportunity Commission (hereinafter

"EEOC") charge in 1999 against Gables' predecessor, H.G. Smithy, which was resolved in Plaintiff's favor in February, 2000. (Complaint, pp. 1 and 3; see also Deposition of William T. Davis, attached hereto as Exhibit 1, p. 13, lines 6 - 15; p. 23, line 11 to p. 24, line 1).

(2)    for making numerous internal complaints about the safety of unlicensed boiler room technicians going into the boiler room and about alleged exposure to asbestos (Complaint, pp. 1-2; see also Exhibit 1, Deposition of William Davis, p. 13, line 16 to p. 14, line 1); and

(3)    for calling OSHA (Complaint, p. 3; see also Exhibit 1, Deposition of William Davis, p. 67, line 2 to p. 68, line 6).

In his deposition, though not in the Complaint, Plaintiff stated that an additional reason for his termination was in retaliation:

(4)    for filing charges with the Wage and Hour Board concerning overtime pay and the practice known as "Chinese overtime." (Exhibit 1, Deposition of William Davis, p. 14, lines 8 - 18).

Plaintiff also admitted that the property manager, Deandra Fooks, terminated him because of:

(5)    his supervisor Chief Engineer Maurice Williams' personal dislike of him (Complaint, p. 3) and Mr. Williams' threat to resign if Plaintiff was not fired (Complaint, p. 3; Exhibit 1, Deposition of William Davis, p. 18, line 4 to p. 19, line 3); and

(6) Ms. Fooks' discomfort working with him after he had ended their romantic relationship by challenging her in the workplace before other employees. (Exhibit 1, Deposition of William Davis, p. 47, lines 3 - 15).

The factual basis for all of Plaintiff's claims is that he was terminated from employment by Gables on July 7, 2003. He did not file a discrimination claim with the EEOC or with the District of Columbia Organization of Human Rights ("DCOHR"). The instant Complaint was filed on July 7, 2005, two years after Plaintiff's termination. He did not exhaust his administrative remedies under Title VII or proceed in this Court after he had received a right-to-sue letter, but skipped the administrative process altogether. Any Title VII claims concerning his discharge are barred by his failure to timely file or exhaust his administrative remedies with the EEOC or DCOHR.

Plaintiff's remaining claims are for wrongful discharge under the District of Columbia common law. Plaintiff fails to state a claim because he admits that there was a legitimate reason for his termination. Plaintiff does not allege that he was terminated because he refused to violate the law or that his termination contravened a clear mandate of public policy. Nor is there evidence from which a reasonable fact-finder could find the necessary causal connection between Plaintiff's complaints and his termination. Plaintiff's common law wrongful discharge claim must be dismissed.

## FACTS

Plaintiff was employed by Gables as assistant chief engineer at Marbury Plaza apartment complex, where Gables carries on a regular course of business, at 2300 Good

Hope Road SE, Washington, D.C. (Deposition of William T. Davis, attached hereto as Exhibit 1, p. 25, lines 6 B 18). He was terminated by the property manager, Deandra Fooks, who (1) was very uncomfortable attempting to supervise Plaintiff after the end of an intimate relationship between them and after Plaintiff had publicly challenged her business decisions, and (2) was not one of the persons involved with Plaintiff's EEOC claim of three years before. Plaintiff's employment was terminated after he criticized the chief engineer, Maurice Williams, for his choice of employee-of-the-month, and Mr. Williams threatened to resign if Plaintiff remained in Gables' employ. Mr. Williams (1) was not one of the persons involved with Plaintiff's prior EEOC claim, and (2) was the individual who chose to promote Plaintiff to assistant chief engineer after the prior EEOC claim. (Id., p.27, lines 7 - 13).

Plaintiff admits that a substantial reason for his termination was Ms. Fooks' discomfort attempting to supervise him. (Id., p. 48, lines 2 - 9). He recognizes that Ms. Fooks fired him because she did not like him, and because both she and Mr. Williams found working with Plaintiff very unpleasant. (Id., p. 82, lines 11-15).

**A.    The Circumstances of Plaintiff's Termination Demonstrate Legitimate Business Reasons for the Termination.**

On July 7, 2003, Plaintiff's at-will employment was terminated by Ms. Fooks, the property manager. (Id., p. 52, lines 7 to 14; p. 48, line 16 to p. 49, line 1). Ms. Fooks informed Plaintiff that she was terminating him for insubordination, because Plaintiff had started an argument with his supervisor, Mr. Williams, a few days earlier. (Id., p. 49, lines 2 - 14). Plaintiff argued with his supervisor because he disagreed with his decision to name

5

a certain employee as employee of the month:

Q.    Tell me, if you would, about your encounter with Mr. Williams having to do with this employee of the month issue.  What happened?

A.    Well, the employee of the month was picked by Ms. Fooks.  She used to pick the employee of the month.  This time - we'd have a monthly meeting and at that time, Ms. Fooks would say the name of the employee of the month and she'd give him - I think the check was $200, I believe.
       At that time Ms. Fooks, for whatever reason, told us I'm not going to name the employee of the month this month.  Maurice is, Maurice Williams.  So he said, he gave the check to Tyrone Moore.  Now during that month he got it for, he was written up once.

Q.    "He" being Tyrone?

A.    Right, and threatened a write-up at another time because he wasn't answering his calls.  He would not go to his calls.  The only calls he would go on were the lock-outs.  He had 17 calls, he went to three.  The three he went to were lock-outs.  We got paid for lock-outs.  The tenants had to give us $25 check or cash before we let them in.  That's the only calls he went on.  So when Maurice gave him that, I didn't say anything in the meeting.  I waited till me and Maurice were outside of the meeting.  I asked him, what did you give him that for?  He didn't deserve that.  Him and Maurice, they go out together, they went to strip clubs together and everything like that.  I knew what it was but I asked him.  He told me he didn't have to answer anything that I said.
       And when I kept on, he asked me, he said, why don't you stop crying? He said, you want some tissue?  That's what he asked me and I got upset at him.  But I never B what they said I said, I'll kick your behind all around here, and I'll put my foot here and MF this and MF that. . . .

       It was all fabricated just to get rid of me.  It was all personal.  Even with employment-at-will, I can understand if you own your company and you don't like that personality, get him out of there.  But if she's your employee and you don't even know nothing about it, if she fires me because she doesn't like me.  That's not employee-at-will as far as I understand.  When they fired me, it was for their own personal reason.  It had nothing to do with the betterment of the company.  It was because both of them were uncomfortable having me around.

(Id., p. 80, line 7 to p. 82, line 15).  Accounts of the argument differ, but it was admittedly

6

loud, and Plaintiff used abusive language. (<u>Id.</u>, p. 84, line 3 to p. 84, line 17; p. 89, line 11 to p. 90, line 9).

The Complaint alleges that on the day of his termination, Mr. Williams stated that if Plaintiff were not terminated by the end of the day that he was going to resign. (Complaint, p. 3) ("I believe I was fired not because of my conduct, but because Mr. Williams threatened to resign if I were not fired by the days end.").  Plaintiff testified that the chief engineer's threat to quit put pressure on the manager to fire Plaintiff:

> Q.    Were there any other reasons for the discharge, in your opinion, other than the four categories of reasons that you've mentioned?
>
> A.    Yes, when the incident happened -- the incident happened between me and the chief engineer, he told two of the maintenance guys that he went there after the incident happened, he went down to the maintenance shop and told -- as a matter of fact, he told the entire crew that if I wasn't out of there by the end of the day, he was going to quit.  And I believe that also put pressure on the manager because he's the chief engineer and the chief engineer is like a chef in the kitchen.  Without him, you don't have a kitchen.  Without chief engineer, you can't even B you're in violation of codes if you don't have one down there.
>
> Q.    The chief engineer was Maurice Williams?
>
> A.    That was his title.  He wasn't an engineer because he didn't have a license.  That was the title that he used.
>
> Q.    Was the person to whom you were referring Maurice Williams?
>
> A.    Yes.

(Exhibit 1, Deposition of William T. Davis, p. 18, line 4 to p. 19, line 3).  Thus, one of the explanations that Plaintiff offers for his termination is that it was a business decision to retain the chief engineer, Mr. Williams, rather than the assistant chief engineer, when the

working relationship between them was so unpleasant that they could not both be retained.

In his deposition, Plaintiff testified that another reason for his discharge was that the property manager, Ms. Fooks, was uncomfortable supervising him after his public disrespect for her authority caused an end to their intimate relationship in April 2003, three months before she fired him. (Id., p. 46, line 5 to p. 47, line 2). Plaintiff's challenge to Ms. Fooks in the presence of other people brought an acrimonious end to their romantic relationship and brought Ms. Fooks to the brink of quitting:

Q.     Why did your relationship fall apart?

A.     Well, she said it was because I didn't back her or whatever. She thought that I was B because I asked her, I questioned her about some things as far as the maintenance techs were concerned, about getting us equipment and things like that and I did it in front of people, and she felt like since we had that kind of relationship or friendship that I shouldn't have done that. And she took it really personal.

As a matter of fact, she quit that day. She walked into her office, she packed up everything she had, her pictures, all her personal effects and told everybody, I'm out of here, this is my last day and left.

(Id., p. 47, lines 3 - 15). Plaintiff admitted that one reason for Ms. Fooks' decision to terminate him was that she was uncomfortable supervising him after this incident:

Q.     She's the one who fired you in July?

A.     Yes. It was very uncomfortable having me around because some of the maintenance techs and things B she had questioned how she would be able to discipline me with our relationship. When our relationship ended, I believe that it made her very, very uncomfortable which may have not been the primary reason that she fired me, but I think that that has a lot to do with her decision.

(Id., p. 48, lines 1 - 9) (emphasis added).  The context of Plaintiff's retaliation claim is that Plaintiff had created very uncomfortable working relationships with both his supervisor, Mr. Williams, and manager, Ms. Fooks.  Plaintiff had made the work environment so unpleasant that Mr. Williams and Ms. Fooks each reacted to his challenging their authority by threatening to quit.

**B.    The Alleged Basis for Plaintiff's Federal Title VII Discrimination Claim.**

Notwithstanding his history of arguing with both his property manager and his supervisor to the point where both of them considered quitting rather than continuing to work with him, Plaintiff claims that his termination was unlawful retaliation for Title VII protected activities years before.  In November 1999, Plaintiff had been terminated from his employment by Mr. Jurney of Gables' predecessor firm, H.G. Smithy, and on December 8, 1999, he filed an EEOC charge regarding that termination. (Id., p. 20, line 12 to p. 24, line 1; p. 23, lines 11 - 18).  The EEOC complaint was settled through mediation on February 9, 2000. (Id., p. 21, line 8 to p. 22, line 5).  Plaintiff was reinstated with H.G. Smithy. (Id., p. 21, line 15 to p. 22, line 1).  Only his place of work was changed to Marbury Plaza.  (Id.).

More than two and a half years later, in November 2002, Gables took over the management of Marbury Plaza from H.G. Smithy.  (Id., p. 20, lines 12 - 17).  After Gables became the management employer, Plaintiff was retained, but Mr. Jurney, the individual who had fired Plaintiff in 1999, was not. (Id., p. 24, lines 13 - 18).  Shortly after Gables took over, Maurice Williams was hired as chief engineer, (Id., p. 26, line 2 to p. 28, line 20), and became Plaintiff's supervisor, (Id., p. 89, lines 17 - 20, p. 90, lines 3 B 6).  He promoted

Plaintiff to the position of assistant chief engineer at Gables. (Id., p. 27, lines 7 - 13). Ms. Fooks also become property manager on a date after Plaintiff's EEOC claim; she was not the property manager when Plaintiff first went to Marbury Plaza. (Id., p. 45, lines 7 - 13). Thus, Plaintiff's Title VII claim is that his discharge by Ms. Fooks, the property manager of Gables, as urged by Mr. Williams, his supervisor, was in retaliation for Plaintiff's bringing an EEOC charge against a different employer, H.G. Smithy, more than three years earlier, at a time before either Ms. Fooks or Mr. Williams knew or worked with Plaintiff.

**C.     Plaintiff's Failure to File an Administrative EEOC Claim.**

There is no evidence of any EEOC Charge of Discrimination relating to this claim. Plaintiff claimed in his deposition that "There was none made." (Exhibit 1, Deposition of William Davis, p. 42, line 1). Plaintiff testified that the EEOC told him it could not handle his claim for retaliation because too long a period, more than two and a half years, had lapsed. (Id., p. 43, lines 1 B 7). Nor did he file a charge of discrimination with the local agency with jurisdiction to grant relief for employment discrimination, the DCOHR. (Id., p. 43, lines 8 - 10). Plaintiff never availed himself of his administrative remedies.

Plaintiff testified that he did not file a charge of discrimination with the EEOC, but believes that he filed a charge of "wrongful termination":

> Q.     Let me jump ahead to a slightly different topic, and that is the second charge of discrimination you filed against my client.
>
> A.     I didn't file a charge of discrimination, I filed a charge of wrongful termination.

(Id., p. 38, line 19 to p. 39, line 1). The evidence that Plaintiff offered of the charges he had

brought was a copy of a Charge Questionnaire which is date-stamped July 21, 2003, by the

Washington Field Office of the EEOC, a copy of which is attached hereto as Exhibit 2.

> Q.    And as you will have heard me just say, the document we're looking at says
> Charge Questionnaire.  It is not a charge of discrimination.  I'm looking for
> a document that says charges of discrimination or something of the sort
> pertaining to July 2003.
>
> A.    Can I see the second page of that?  Right here.  It says right here, date filed,
> and it's stamped on the front with the EEOC stamp and that's the date I filed.
> That's what it says, filed.

(Id., p. 40, line 17 to p. 41, line 3).   Plaintiff testified that he did not in fact bring a charge

of discrimination with the EEOC:

> Q.    . . . My Question is based on the fact that as far as I can tell, you filled out a
> questionnaire in July 2003, but I don't have a charge of discrimination
> document which is the document that is given to the employer.
>
> A.    There was none made.  They said that was not in their realm.  It was not
> discrimination. If anything, it was wrongful termination. That's when I took
> the other legal course.

(Id., p. 41, line 19 to p. 42, line 4).

Plaintiff alleged that he received a letter from the EEOC informing him that he "had

to go through a certain process with them before I could actually take it into court."  (Id.,

p. 43, lines 16 - 18). He testified he received that letter in 2003. (Id., p. 43, lines 11 - 22).   He

would not characterize the letter as a right-to-sue letter, but claimed that it informed him

that his next step was to bring charges in court.  (Id.).  Plaintiff did not acknowledge that

a right-to-sue letter from the EEOC states that legal proceedings must be instituted within

ninety days, but stated that it was his understanding that the letter from the EEOC gave

him two years from the date of the incident within which to file suit. (Id., p. 44, lines 7 - 16).

Plaintiff stated that he lost or misplaced this letter from the EEOC. (<u>Id</u>., p. 44, lines 1 - 6). The evidence demonstrates that Plaintiff did not file charges regarding his Title VII claims with either the EEOC or the DCOHR. Accordingly, the Title VII discrimination claim is time-barred. If Plaintiff were to show that he did file an administrative charge of discrimination, and that he did receive a right-to-sue letter, his Title VII claim would be time-barred by virtue of having been brought at least a year and a half after he received the right-to-sue letter. Consequently, Plaintiff's Title VII claim must be dismissed with prejudice.

**D.    Plaintiff's District of Columbia Common Law Wrongful Discharge Claim.**

**1.    Internal Complaints about Boiler Technicians and Asbestos.**

The Complaint alleges that another reason for Plaintiff's termination was that he complained "about the safety factor involving maintenance techs working on boilers without training or licensing," (Complaint, p. 2), and "about my exposure to hazardous materials (<u>i.e.</u>, asbestos) without the benefit of training or protective covering" (<u>Id</u>.). Plaintiff testified that he and the rest of the maintenance crew made internal complaints about exposure to hazardous materials at work, including lead and asbestos, and requested protective clothing and training. (Exhibit 1, Deposition of William Davis, p. 13, line 16 to p. 14, line 7; p. 45, line 1 to p. 46, line 4). They spoke to Ms. Fooks and to the chief engineer, Mr. Williams. (<u>Id</u>.). Plaintiff never submitted his requests in writing. (<u>Id</u>., p. 32, lines 12 - 19).

Plaintiff did not refuse to violate the law, refuse to do as he was asked to do, or

refuse to violate a public policy; nor was his termination because of his refusal to comply with a request to break the law or to violate a public policy. His alleged complaints did not implicate any public policy based on a statute or regulation that reflects the particular public policy to be applied.

Plaintiff does not allege any basis for a factual finding that his complaints were linked to his termination. Plaintiff's internal complaints were not distinguishable from the complaints of other maintenance employees. He testified, "I made numerous complaints - not only me. The rest of the maintenance crew, we made numerous complaints to both Ms. Fooks and Mr. Maurice Williams … concerning our exposure to hazardous materials …" (Id., p. 13, line 17 to p. 14, line 1). When asked more specific questions about the complaints to Ms. Fooks, the manager who terminated him, Plaintiff clarified that he had not in fact made any complaints to her:

Q.    You made these complaints and requests to Ms. Fooks?

A.    I made it to the chief engineer and he said he was going to talk to Ms. Fooks. Whether he actually talked to her, I don't know.

Q.    The question was whether you yourself made any such requests or complaints to her.

A.    I talked to her about it, yes. It wasn't in the form of a complaint but I did talk to her about it.

Q.    What form was it?

A.    Well, we had a relationship that was more than employee/employer or supervisor, so I did it on off time. We weren't on duty at the time.

(Id., p. 45, line 14 to p. 46, line 4). Thus, Plaintiff made the same internal complaints as his

co-employees, but did not make complaints directly to Ms. Fooks. Plaintiff was not terminated solely or substantially for engaging in alleged whistleblowing conduct. His alleged internal complaints did not implicate any public policy set forth in any statute, Constitution, or regulation.

**2.      Allegation, Not Made In the Complaint, of a Call to the Wage and Hour Board.**

Plaintiff in his deposition alleged a factual basis for his claim of wrongful discharge that was not mentioned in his Complaint. He stated that he believed a complaint which he made to the Wage and Hour Board was also a reason for his termination. (Id., p. 55, lines 2 - 8). He allegedly telephoned a complaint about an alleged practice of "Chinese overtime" and about payment for on-call time. (Id., p. 57, line 3 to p. 58, line 14.) He was informed that his complaint would be investigated, and the next day was told that the Board had called the company and the company was "within their rights." (Id., p. 59, line 11 to p. 60, line 5).

It appears that the call was made on or about January 14, 2003, six months before his termination.

> Q.    You're showing me an authorization dated February 3, 2003 which is, of course, before the date you were fired and that authorization allowed you to-
>
> A.    It allowed the Employment Administration to use my name because they ask you if you want to be anonymous or not. I told them yes, they could use my name.
>
> Q.    What it actually says is authorized to use your name and information in your statement of January 14, 2003. Do you have a statement of January 14, 2003 among your paperwork?
>
> A.    No, because I made a statement on the phone.

(<u>Id</u>., p. 61, lines 2 -14).  No member of management at Gables knew of Plaintiff's telephone call to the Wage and Hour Board.  There is evidence only that Plaintiff had authorized his name to be released, not that it was given to Gables' management.  Nor did any member of management mention Plaintiff's Wage and Hour Division call:

> Q.    Did anybody associated with management at Gables say anything to you that led you to conclude that your July 2003 termination was related to your complaints to the Wage and Hour Division?
>
> A.    There was an offhand remark.  It wasn't direct.  When I made complaint to Mr. Williams once, he asked me, listen, do you want to work here? If you're not happy working here, you can just, you know, we can remedy that or something to that effect which, to me, was saying if you don't stop, we're going to fire you.
>
> Q.    Did he reference your complaints to Wage and Hour in particular as opposed to your complaint about lead and asbestos and this and that?
>
> A.    No, **I was considered by Mr. Williams and most of the managers as a trouble maker** because I made complaints about things.  You know, there were a number of things.  They had a book that said, gave hours of how long it should take for you to do a certain job and if you spent B if they put down you take between one and two hours on that job and you put down four hours, they just wouldn't pay you.  I stopped that.  That was illegal too.  Everything I complained about was illegal.  It was just that **I wasn't considered what they call a team player**.

(<u>Id</u>., p. 62, line 12 to p. 63, line 14) (emphasis added).

The substance of Plaintiff's factual allegation is that he believes that an additional fact outside of the allegations in the Complaint, a call to the Wage and Hour Division of the Department of Labor, may have contributed to Defendant Gables' reasons for terminating him.  Plaintiff telephoned to the Wage and Hour Division in January 2003 and gave permission to use his name in connection with their investigation.  The next day he was

15

contacted and told that his complaint had been investigated and closed.  His name was not given to any member of Gables' management, and the company was not informed of his call.  There is no reason apart from pure surmise and conjecture to believe that Plaintiff's call to the Wage and Hour division was connected in any way to his termination.

Plaintiff's allegations of his calls concerning Wage and Hour Division matters of pay or compensation at Gables are not mentioned at all in the Complaint.  They are not related in any way to the alleged whistleblowing that is referenced in the Complaint.   As Plaintiff's termination occurred more than four years ago, an action for wrongful discharge on the basis of Plaintiff's alleged Wage and Hour Complaint would now be outside of the three-year statute of limitations for a general tort.

**3.	Reference to a Call to OSHA.**

A factual allegation that was given brief mention in the Complaint was that Plaintiff had called the Occupational Safety and Health Administration (hereinafter "OSHA"). (Complaint, p. 3).  The details of the call are not set forth in the Complaint.  The Complaint only states, "I believe I was fired not because of my conduct, but because Mr. Williams threatened to resign if I were not fired by the days end.  Also, retaliation for past actions (i.e., reporting them to EEOC and winning my case, calling (OSHA)]." (Complaint, p. 3). There is no further reference in the Complaint to any call or complaint to OSHA.

In his deposition, Plaintiff alleged that he placed two calls to OSHA on one day and complained about his exposure to asbestos and lead (Exhibit 1, Deposition of William T. Davis, p. 67, line 2 to p. 68, line 6).  On "both occasions, whoever answered the phone, the

gentleman who answered the phone said B he looked at his file and said, well, we were out there last year or a couple months ago and everything was fine, they passed the inspection." (Id., p. 14, line 19 to p. 15, line 2).

Plaintiff did not allege that he told any member of management about the alleged calls to OSHA. There is no evidence that OSHA contacted Gables in response to Plaintiff's calls or that there was any subsequent investigation or communication from OSHA which might have alerted management to Plaintiff's complaint.  Plaintiff did not inform any of his supervisors or management about his complaint to OSHA or discuss it with any member of Gables' management.  Furthermore, Plaintiff testified that the calls to OSHA were made in late 2003.  (Id., p. 67, lines 16-18).  Thus, the evidence shows that the day of Plaintiff's calls to OSHA was after the date of his termination on July 7, 2003.

## SUMMARY JUDGMENT STANDARD

Rule 56(b) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered in favor of a moving party when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).  The moving party must demonstrate that the non-moving party failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.  The non-moving party must then come forward with proof that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S.

17

242, 249, 106 S.Ct. 2505 (1986).  The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  <u>Celotex</u>, 477 U.S. at 323.

When the moving party has demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Anderson</u>, 477 U.S. at 587 (citing Fed.R.Civ.P. 56(e)) (emphasis in original).  To be genuine, an issue must be supported by sufficient admissible evidence that a reasonable fact-finder could find for the non-moving party; and to be material, a factual assertion must be capable of affecting the substantive outcome of the litigation.  <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). The non-moving party must present affirmative evidence; it may not rely solely on mere conclusory allegations. <u>Greene v. Dalton</u>, 164 F.3d 671, 675 (D.C. Cir. 1999).  Plaintiff must do more than "show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).  In light of these standards, Defendant Gables is entitled to summary judgment as a matter of law on Plaintiff's claims.

## <u>ARGUMENT</u>

## I.    PLAINTIFF'S TITLE VII CLAIMS ARE TIME-BARRED.

Plaintiff is attempting to assert a claim of employment discrimination, in the form of an adverse employment action in retaliation for his filing employment discrimination charges more than three years before.  However, he never filed an EEOC Charge of

Discrimination or brought a charge with the District of Columbia's human rights agency, the DCOHR, regarding his 2003 termination. (Defendant's Revised Statement of Material Facts (hereinafter "Statement of Facts") ¶¶ 14 - 16.  Thus, his Title VII claim is barred by his failure to timely bring or exhaust administrative remedies. (Statement of Facts, ¶17).

A discriminatory act is not actionable under Title VII if more than 180 or 300 days have passed before a plaintiff filed a charge with the EEOC or work-sharing local agency. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002).  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id.

The only discriminatory action alleged by Plaintiff is his termination on July 7, 2003, two years before the instant complaint was filed.  (Statement of Facts, ¶2).  Plaintiff's discharge from employment is thus not an actionable discriminatory action under Title VII if Plaintiff failed to file a Charge of Discrimination within 300 days of July 7, 2003.  He did not do so.  (Statement of Facts, ¶¶14-16).  Therefore this action simply does not lie under Title VII.

Under 42 U.S.C. §2000e-5(e)(1) and 12 U.S.C. §1432(a), Plaintiff must exhaust administrative remedies with respect to an alleged discriminatory act by filing an EEOC charge within 180 days after the date on which the act occurred. According to 42 U.S.C. §2000e-5(e)(1), an aggrieved person must file an EEOC charge within 180 days after the alleged unlawful employment practice unless the person "has initially instituted

proceedings with a state or local agency with authority to grant or seek relief from such practice." 42 U.S.C. §2000e-5(e)(1). If a state or local agency possesses jurisdiction to grant or seek relief for the alleged unlawful employment practice, the EEOC will defer its jurisdiction to that agency, and the complainant will be allowed 300 days to initiate his or her complaint with that agency. 42 U.S.C. §§2000e-5(c) and (e). "The District of Columbia is a deferral jurisdiction for purposes of processing discrimination complaints." Banks v. District of Columbia, 377 F.Supp.2d 85, 90 (D.D.C. 2005) (citing Palmer v. Barry, 894 F.2d 449, 451 n. 2 (D.C.Cir. 1990)). The DCOHR is the local agency with jurisdiction to handle employment discrimination claims. See, 29 C.F.R. §1601.74 (1989). Plaintiff was therefore allowed 300 days from his termination to initiate an administrative charge.

Plaintiff's admission that he did not file any administrative charge of discrimination and his failure to produce a copy of a Charge of Discrimination indicate that he never availed himself of his administrative remedies. His failure to file an EEOC or DCOHR charge within two years after his discharge, before filing the instant Complaint, precludes the consideration of the Title VII claim of discrimination. Plaintiff did not exhaust his administrative remedies prior to bringing this action, and he cannot remedy his failure to do so, because more than 300 days have passed since the alleged discriminatory action.

Even if Plaintiff were found to have filed an EEOC charge and to have received a right-to-sue letter, he did not bring the instant action within 90 days of receiving the right-to-sue notice. Under 42 U.S.C. §2000e-5(f)(1), an individual Title VII plaintiff may sue within 90 days after the EEOC gives him notice of his right to sue. Plaintiff did not file his

suit until 2005, at least a year after he alleges he received a letter from the EEOC.  If Gables'

actions were determined to rise to the level of discrimination or retaliation for engaging in

a protected activity (and plainly they do not), Plaintiff's action would still be time-barred.

The Title VII claim is not timely brought in this Court.  Accordingly, summary

judgment on that claim must be granted.

## II.  PLAINTIFF HAS NOT DEMONSTRATED ANY MATERIAL ISSUE OF FACT TO SUPPORT A WRONGFUL DISCHARGE CLAIM.

### A.  The General Requirements for a Common Law Wrongful Discharge Claim.

Plaintiff's remaining allegations appear to be an attempt to state a common law

claim of wrongful discharge in violation of public policy.  As a general rule, the courts in

the District of Columbia recognize the at-will employment doctrine, holding that "an

employer may discharge an at-will employee at any time and for any reason, or for no

reason at all." Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991).   In the

District of Columbia, "employment is presumed to be at will, unless the contract of

employment provides otherwise." Carl v. Children's Hosp., 702 A.2d 159, 162 (D.C.1997)

(en banc).  In the case at bar, Plaintiff was an at-will employee (Statement of Facts, ¶2), and

his claim does not justify an exception to the general rule that an at-will employee may be

discharged at any time, for any reason.

The District of Columbia Court of Appeals in Adams articulated an exception in the

District of Columbia common law to the general rule regarding termination of at-will

employment.  Under Adams, "a discharged at-will employee may sue his or her former

employer for wrongful discharge when the sole reason for the discharge is the employee's

refusal to violate the law, as expressed in a statute or municipal regulation." <u>Adams</u>, 597 A.2d at 30.  In <u>Adams</u>, the Court of Appeals recognized a public policy exception to the at-will doctrine, stating that it is unlawful for an employer to compel an employee to choose between breaking the law and keeping his job. <u>Id</u>. at 34.

Adams brought a wrongful discharge action against his former employer, alleging that he was terminated for refusing to drive a truck which did not have the required inspection sticker. <u>Id.</u> at 30.  The Court recognized a "very narrow exception" when the "sole reason for the discharge is the employee's refusal to violate the law." <u>Id</u>.  "The burden of proving by a preponderance of the evidence **that this was the sole reason** shall be on the fired employee." <u>Id</u>.  (emphasis added).

In the case at bar, Plaintiff fails to meet the <u>Adams</u> exception because (1) he was not threatened with termination or discipline if he refused to break the law (Statement of Facts, ¶20); (2) there is no allegation that he refused to break the law (Statement of Facts, ¶20); and (3) he has alleged credible reasons for his discharge that do not implicate a statute or regulation for his termination (Statement of Facts, ¶¶3 - 9).  The evidence therefore fails to demonstrate that the sole reason for Plaintiff's discharge was his refusal to violate the law.

The Court of Appeals in <u>Carl v. Children's Hosp.</u> later held that other exceptions in addition to the strict and narrow Adams exception may be available to a discharged at-will employee. The plaintiff employee in <u>Carl</u> was a nurse who claimed she was discharged for (1) testifying before the District of Columbia Council on proposed tort reform in a manner contrary to her employer's interests; and (2) testifying as an expert witness for plaintiffs in

medical malpractice cases. The plaintiff recognized that she did not meet the <u>Adams</u> wrongful discharge exception, but claimed that her termination contravened specific District of Columbia public policies, including the prohibition of any endeavor to influence, intimidate or impede a witness in a proceeding before the Council. <u>Carl</u>, 702 A.2d at 159. She argued that the <u>Adams</u> exception should be expanded to include the rights of employees to speak out publicly on issues affecting the public interest. <u>Id</u>. at 159, 161. <u>Carl</u> held that the narrow Adams exception does not preclude recognition of other public policy exceptions to the at-will doctrine, and that the public policy exception was not limited to cases where an at-will employee was discharged for an outright refusal to violate the law.

An employee's refusal to violate the law was accepted by the <u>Adams</u> Court as a sufficient public policy interest to justify an exception to the at-will doctrine. The scope of sufficient public policy interests was expanded in <u>Carl</u> such that "circumstances other than an employee's outright refusal to violate a law constitute grounds for a public policy exception if 'solidly based on a statute or regulation that reflects the particular public policy to be applied.'" <u>Liberatore v. Melville Corp.</u>, 168 F.3d 1326, 1330 - 31 (D.C.Cir. 1999), quoting <u>Carl</u>, 702 A.2d at 163. An action pursued under Carl must be "firmly anchored in either the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon," and "there must be a close fit between the policy thus declared and the conduct at issue." <u>Fingerhut v. Children's Nat'l Med. Ctr.</u>, 738 A.2d 799, 803 n. 7 (D.C.1999), quoting <u>Carl</u>, 702 A.2d at 162, 164. <u>Carl</u> thus created a whistleblower exception to the at-will employment doctrine. <u>See, Taylor v. Washington Metro. Area</u>

Transit Auth., 109 F.Supp.2d 11, 17 n.7 (D.D.C. 2000).

"To establish a prima facie case of retaliation [for whistleblowing under District of Columbia common law], a plaintiff must show that: (1) he engaged in a protected activity, (2) the employer took an adverse personnel action, and (3) there was a causal connection between the two." Taylor, 109 F.Supp.2d at 17 (citing McDonnell Douglas v. Green, 411 U.S. 792 (1973)). Plaintiff must prove that the sole reason for his discharge, or at least a substantial reason, was his engaging in whistleblowing activity that entails an express public policy. Taylor, 109 F.Supp.2d at 17.

Plaintiff's allegations fail to meet the minimum requirements to establish a common law wrongful discharge claim in the District of Columbia. He has failed to demonstrate any public policy exception to the established doctrine of employment at will. The Adams and Carl analysis requires that Plaintiff's termination must be for conduct that implicates expressly recognized public policies. No such public policy has been identified. In addition, Plaintiff must show that there was a close causal link between his refusal to violate an established public policy and his termination. Plaintiff's wrongful discharge claim is not supported by the necessary causal link between a public policy exception and the discharge.

**B.    Application of the Public Policy Exception.**

In Taylor, Plaintiff refused to violate certain safety rules and then reported the safety violations. Six years later, after many other events supporting a reason for discharge had occurred, he was demoted. Taylor at 15 n. 6. The Court found that Taylor failed to

24

establish a prima facie case of actionable retaliation on the basis of alleged whistleblowing activity, however, because he did not assert that his discharge was solely or even substantially because he reported a safety violation.  Taylor, 109 F.Supp.2d at 17 (citing Wallace v. Skadden, Arps, Slate, Meagher & Flom, et al., 715 A.2d 873 (D.C.1998) (finding that plaintiff was not terminated solely, or even substantially, for engaging in conduct protected by a public policy exception).

In Bowie v. Gonzales, 433 F.Supp.2d 24 (D.D.C. 2006), the plaintiff claimed that defendants violated public policy by attempting to force him to support another employee's termination.  "Whether a discharge violates public policy is determined on a case-by-case basis, guided by the concept that a wrongful termination cause of action must be 'firmly anchored in either the Constitution or in a statute or regulation which clearly reflects the particular "public policy" being relied upon.'"  Id., at 30, quoting Warren v. Coastal Int'l Secs., Inc., 96 Fed.Appx. 722, 722-23 (D.C.Cir. 2004).  The Court found that "while attempts to strong-arm plaintiff into supporting Johnson's dismissal are not admirable actions, they do not rise to the level necessary for a public policy violation supporting an exception to at-will employment doctrine in a wrongful termination claim."  Bowie, 433 F.Supp.2d at 31.

Plaintiff's claim must demonstrate that he was terminated solely or at least substantially for engaging in conduct protected by the public policy exception.  For example, in Wallace v. Skadden, Arps, Slate, Meagher & Flom, et al., 715 A.2d 873 (D.C.1998), an attorney at Skadden Arps claimed that she was wrongfully discharged for

reporting ethical wrongdoing to her superior and thereby refusing to violate rules of professional conduct. However, "[t]he narrow exceptions to the 'employment at-will' doctrine which we have recognized in <u>Adams</u> and <u>Carl</u> were not designed to prevent an employer from terminating an at-will employee in order to eliminate unacceptable internal conflict and turmoil. It matters little, if at all, who was most at fault. An employer is not required to tolerate an intolerable working environment." <u>Wallace</u>, 715 A.2d at 886. "[T]he plaintiff's own complaint revealed that she was not terminated solely, or even substantially, for engaging in conduct protected by such an exception. Accordingly, her claim for wrongful termination fails." <u>Id</u>. In the case at bar, a reasonable fact-finder could not find that expressly declared public policy whistleblowing was the sole or substantial reason for Plaintiff's discharge.

**C.    Plaintiff's Alleged Whistleblowing is Not Protected Conduct Under a Public Policy Exception.**

Plaintiff allegedly made internal complaints about conditions of his workplace, including complaints about his safety concerns involving unlicensed boiler technicians and his exposure to asbestos. (Statement of Facts, ¶¶18 - 23; Complaint, p. 2). However, Plaintiff does not state an action "'solidly based on a statute or regulation that reflects the particular public policy to be applied.'" <u>Liberatore</u>, 168 F.3d at 1331, quoting <u>Carl</u>, 702 A.2d at 163.

Plaintiff might attempt to argue that there is a public policy to protect an individual from adverse employment actions in retaliation for exposing the presence of asbestos in the workplace. However, statutory protection for such conduct by an employee is expressly

not applicable to an individual in Plaintiff's position. The Asbestos Hazard Emergency Response Act of 1986 (hereinafter "AHERA") provides only that "No state or local educational agency" may discriminate against a person in any way, including by firing, because that person provided information relating to a potential violation of that title. 15 U.S.C. §2651(a). Gables, a residential management company, does not fall within the ambit of AHERA's express public policy. Plaintiff's alleged whistleblowing thus does not fall within the protection of the statute.

Plaintiff has certainly not stated a claim for wrongful discharge on the basis of alleged whistleblowing regarding a wage and hour complaint, whether or not such a complaint would be protected conduct under the Fair Labor Standards Act. (See Statement of Facts, ¶¶25-29 and 33). Plaintiff's Complaint does not allege any fact at all relating to a wage and hour complaint. (Statement of Facts, ¶30). The allegation of a Wage and Hour Board call or complaint bears no relation at all to any of the alleged whistleblowing activity that is described in the Complaint. (Statement of Facts, ¶31). The allegations in the Complaint, if true, thus cannot possibly support a finding of a causal connection between Plaintiff's alleged Wage and Hour complaint and his termination. In addition, because the Plaintiff's termination occurred more than four (4) years ago the three-year general statute of limitations period has passed, and an amended Complaint that added allegations of a complaint to the Wage and Hour Division would be time-barred. (Statement of Facts, ¶32).

OSHA's statutory protection for whistleblowers does not express a particular public policy that applies to Plaintiff. An individual has statutory protection from retaliation for

bringing a complaint about working conditions under section 11(c) of OSHA, 29 U.S.C. §660(c). The statute provides, in relevant part:

(1)     No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

(2)     Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. ...

29 U.S.C. §660(c). Thus, Plaintiff does not have a private right of action under OSHA if he was terminated in retaliation for whistleblowing. The statute does not closely describe a public policy that Plaintiff should have a private remedy against his employer in the event of an adverse employment action in retaliation for whistleblowing. OSHA sets forth a public right of action of which Plaintiff chose not to avail himself. The statutory expression of public policy is sufficient and exclusive.

Furthermore, if the Court were to determine that the common law affords an individual a private right of action beyond the governmental cause of action provided by OSHA section 11(c), the existence of a public policy alone is not sufficient. In order to establish a prima facie case, Plaintiff must show not only (1) the existence of a public policy exception which constitutes a protected activity in the common law and (2) an adverse

employment action, but also (3) a causal connection between the two.  <u>Taylor</u>, 109 F.Supp.2d at 17.  The evidence does not allow the finding of the required close causal connection. (Statement of Facts, ¶¶34-36 and 39).  The evidence shows that Plaintiff made his telephoned complaint to OSHA after his termination from Gables' employ, not before. (Statement of Facts, ¶38.)  No member of management knew of any complaint by Plaintiff to OSHA.  (Statement of Facts, ¶37).  Plaintiff has not stated a claim of wrongful discharge on the basis of his alleged whistleblowing to OSHA.

**D.    Plaintiff Was Not Discharged Solely or Substantially For Protected Whistleblowing Activity, And Has Not Established a Prima Facie Case.**

Viewing the facts in Plaintiff's favor, he has failed to establish a viable claim under the "very narrow" public policy exceptions to the at-will doctrine. <u>Adams</u>, 597 A.2d at 34; <u>Wallace</u>, 715 A.2d at 883-86. The employee's engaging in conduct protected by the public policy exception must be the sole or substantial reason for his termination.  <u>Taylor</u>, 109 F.Supp.2d at 17.  <u>Wallace</u>, 715 A.2d at 886.  Plaintiff's common law claim must fail because his conduct was not protected by any express public policy and because a reasonable fact-finder could not find that it was the sole or substantial reason for his termination.  (See Statement of Facts, ¶¶3-9).  Plaintiff's alleged whistleblowing was not the sole or substantial cause of his termination.  (Statement of Facts, ¶¶24, 33,and 39).

Exceptions to the at-will doctrine must be narrowly construed.  <u>Adams</u>, 597 A.2d at 33-34;  <u>Carl</u>, 702 A.2d at 161.  In this case, as in <u>Taylor</u>, there were numerous legitimate reasons for Plaintiff's discharge.  He publicly challenged the authority of the property manger, Ms. Fooks, upsetting her enough to make her threaten to quit. (Statement of Facts,

¶¶7-9). He criticized the chief engineer for whom he worked, Mr. Williams, and argued with him in loud and abusive language. (Statement of Facts, ¶¶3-6). He was a confessed troublemaker and described himself as "not a team player." (Statement of Facts, ¶29). His supervisor and his property manager were uncomfortable working with him (Statement of Facts, ¶¶5, 8), and understandably so. Plaintiff's wrongful discharge claim is not supported by sufficient evidence from which a reasonable fact-finder could find the necessary causal connection that Plaintiff's alleged whistleblowing was the sole or substantial reason for his discharge.

In this case, as in <u>Wallace</u>, the Defendant was legally entitled to eliminate internal conflict and turmoil in the working environment. "An employer is not required to tolerate an intolerable working environment." <u>Wallace</u>, 715 A.2d at 886. Whether or not Plaintiff agreed with his supervisor and his manager that it was a good business decision, their desire to have him out of the workplace was a legitimate one. The holdings of the Courts in <u>Taylor</u> and <u>Wallace</u> are on point. An employer may discharge an employee if there are legitimate reasons supporting the discharge, and the employer is not required to endure an intolerable working environment.

There is no material issue of fact sufficient to raise a genuine issue for trial with respect to Plaintiff's common law wrongful discharge claim. Accordingly, summary judgment on that claim must be granted.

## CONCLUSION

Based on the foregoing, Defendant Gables Residential Services, Inc., respectfully requests that this Honorable Court enter summary judgment against Plaintiff with respect to Plaintiff's claims against Defendant Gables Residential Services, Inc.

Respectfully submitted,

KARPINSKI, COLARESI & KARP

BY: _____/s/_____
DANIEL KARP, Bar ID# 424246
120 East Baltimore Street, Suite 1850
Baltimore, Maryland 21202
410-727-5000
410-727-0861 (facsimile)
*Attorneys for Defendant Gables Residential
Services, Inc.*

## CERTIFICATE OF SERVICE

hereby certify that on this 24th day of July 2007, a copy of the foregoing Defendant's Revised Memorandum in Support of Motion for Summary Judgment was electronically filed and sent by first class mail, postage prepaid, to:

William T. Davis
3501 Pacific Avenue
Apartment 89
Atlantic City, New Jersey 08401

_____/s/_____
Of Counsel for Defendant