UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM T. DAVIS,

　　Plaintiff,

　　v.

GABLES RESIDENTIAL/ H.G. SMITHY,

　　Defendant.

Civil Action No. 05-1358 (CKK)

**MEMORANDUM OPINION**
(November 29, 2007)

*Pro se* Plaintiff, William T. Davis, brought the above-captioned action against his former

employer, Defendant Gables Residential Services, Inc. (hereinafter "Defendant" or "Gables"),

regarding his July 2003 termination.  Plaintiff's Complaint alleges that his termination

constituted retaliation for: (1) filing and successfully pursuing a Charge of Discrimination with

the Equal Employment Opportunity Commission ("EEOC"); (2) voicing numerous complaints to

Defendant's management regarding working conditions; and (3) calling the Occupational Safety

and Health Administration ("OSHA") to report exposure to hazardous materials.  While Plaintiff

does not delineate particular legal grounds for his Complaint, he appears to assert a claim under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as well as a wrongful

discharge claim pursuant to District of Columbia common law.

On July 24, 2007, Defendant filed a Revised Motion for Summary Judgment, asserting

that Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims.[1]  Following

---

[1] Defendant initially filed a Motion for Summary Judgment on July 13, 2007.  By Order
dated July 23, 2007, the Court denied that motion without prejudice because the corresponding
Statement of Material Facts was drafted in narrative form, rather than in precise, individually

several extensions of time in which to oppose that motion, Plaintiff filed a letter notice with the

Court indicating that he opposes Defendant's motion for summary judgment, but does not

consider himself able to file a substantive response to Defendant's motion. The Court has now

conducted a searching review of Defendant's Revised Motion for Summary Judgment, the

transcript of Plaintiff's deposition in this matter, and the relevant statutes and case law, and

concludes that no genuine questions of material fact exist, such that Defendant is entitled to

judgment as a matter of law. While the Court is sympathetic to *pro se* Plaintiff's request that the

Court deny Defendant's motion for summary judgment, Plaintiff's own deposition testimony

makes clear that there is no causal connection between Plaintiff's July 2003 termination and

either his previous EEOC charge or his numerous complaints. Furthermore, Plaintiff admits that

Defendant had a legitimate, non-retaliatory reason for terminating him in July 2003. The Court

shall therefore grant Defendant's Revised Motion for Summary Judgment on the merits.

## I. BACKGROUND

The Court begins its discussion by noting that this Court strictly adheres to the text of

Local Civil Rule 56.1 (identical to Local Civil Rule 7(h) (formerly Rule 7.1(h)). The local rules

for summary judgment "assist[] the district court to maintain docket control and to decide

motions for summary judgment efficiently and effectively." *Jackson v. Finnegan, Henderson,*

*Farabow, Garret & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996). "Requiring strict compliance

with the local rule is justified both by the nature of summary judgment and by the rule's

---

numbered paragraphs to which *pro se* Plaintiff could easily respond. *See* Order, Docket No. [35],
July 23, 2007. The Court ordered Defendant to file a revised Statement of Material Facts, along
with a revised motion for summary judgment, if necessary. Defendant filed its Revised Motion
for Summary Judgment on July 24, 2007.

purposes. . . . The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record." *Id.* (quoting *Gardels v. CIA*, 637 F.2d 770, 773 (D.C. Cir. 1980). "[A] district court should not be obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact." *Id.* (quoting *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).

As noted above, the Court struck Defendant's initial statement of material facts for failure to strictly comply with the Local Civil Rules, and Defendant has filed a compliant Revised Statement of Material Facts Not Genuinely at Issue (hereinafter "Def.'s Stmt."), based primarily on Plaintiff's deposition transcript. That document does not include a clear chronological account of the relevant facts. The Court therefore sets forth such relevant facts as can be discerned from Plaintiff's Complaint and the transcript of Plaintiff's deposition. Plaintiff has not substantively responded to Defendant's motion, and thus does not actually attempt to contravene the factual assertions included in Defendant's Statement. As such, consistent with the Local Civil Rules, the Court "assumes that facts identified by the moving party in the statement of material facts are admitted." LCvR 56.1; 7(h). However, the Court notes that the import of this assumption is tempered in the instant case because Defendant's Statement only relies upon Plaintiff's deposition transcript and his July 21, 2003 EEOC Charge Questionnaire.

A.    *The Parties and Plaintiff's Employment by Defendant*

Defendant, Gables Residential Services, Inc., *inter alia*, "owns, develops and manages multi-family communities and mixed-use developments, as well as provides furnished corporate

3

and short-term apartment accommodations nationwide." *See* Gables Residential, "Company

Overview," *available at* http://www.gables.com/aboutus/company-overview.aspx (last visited

November 21, 2003). In November 2002, Gables took over management of the Marbury Plaza

apartment complex located at 2300 Good Hope Road SE, Washington, DC, from a predecessor

firm–H.G. Smithy. Def.'s Stmt. ¶¶ 10-11. Plaintiff was hired by H.G. Smithy at some point

prior to November 1999, and was employed as chief engineer at the Oxford Manor apartment

complex. *Id.* ¶ 10; Def.'s Mot. for Summ. J., Ex. 1 (Tr. of 4/26/07 Dep. of William T. Davis)

(hereinafter "Davis Dep. Tr.") at 24:1-25:5. In November 1999, an H.G. Smithy supervisor

named Mr. Jurney terminated Plaintiff's employment at Oxford Manor. Def.'s Stmt.¶ 10.

Plaintiff filed an EEOC charge regarding that termination on December 8, 1999, and the charge

was settled through mediation on February 9, 2000. *Id.* Plaintiff's employment with H.G.

Smithy was reinstated with no loss of pay, seniority, or vacation time, although Plaintiff's job

location was changed from the Oxford Manor complex to Marbury Plaza. *Id.*; Davis Dep. Tr. at

21:15-22:1. Plaintiff was employed as a maintenance technician at Marbury Plaza until Gables

took over management of the Marbury Plaza property. Def.'s Stmt. ¶ 11; Compl. at 1.

When it took over management, Gables retained Plaintiff as an at-will employee. Def.'s

Stmt. ¶ 2; Davis Dep. Tr. at 52:7-14. Gables also retained most of H.G. Smithy's management;

however, Mr. Jurney–the individual who terminated Plaintiff in 1999–was not retained. Def.'s

Stmt. ¶ 11; Davis Dep. Tr. at 24:13-18. During his deposition Plaintiff testified that his

supervisors remained the same after Gables took over management of Marbury Plaza. Davis

Dep. Tr. at 33:19-34:4; 37:4-11. However, shortly after taking over, Gables hired Maurice

Williams as chief engineer, and promoted Plaintiff to the position of assistant chief engineer.

Def.'s Stmt. ¶ 12.  Mr. Williams became Plaintiff's supervisor.  *Id.*  At the time of Plaintiff's

termination in July 2003, the Marbury Plaza property manager was Deandra Fooks.   Ms. Fooks

became the property manager at some point after Plaintiff was transferred from Oxford Manor to

Marbury Plaza, i.e., after Plaintiff filed his 1999 EEOC charge  *Id.* ¶¶ 2, 13.  During his

deposition, Plaintiff testified that he received two commendations while employed by Gables,

that his last evaluation at Marbury Plaza was excellent, and that he had never been written up or

reprimanded.  Davis Dep. Tr. at 63:15-21; 64:6-16.

> B.    *Events Leading to Plaintiff's Termination*

On July 7, 2003, Ms. Fooks terminated Plaintiff's employment on the grounds of

insubordination in connection with an incident that occurred between Plaintiff and Mr. Williams.

*Id.* ¶¶ 2-3; Davis Dep. Tr. at 82:19-21.  Specifically, on July 3, 2003, Plaintiff disagreed with Mr.

Williams' decision to name another employee as employee of the month, and challenged Mr.

Williams.  Def.'s Stmt. ¶ 3; Davis Dep. Tr. at 80:7-85:1.  According to Plaintiff:

> [Mr. Williams] told me he didn't have to answer anything that I said.  And when I
> kept on, he asked me, he said, why don't you stop crying?  He said, you want
> some tissue?  That's what he said and I got upset at him.  But I never -- what they
> said I said, I'll kick your behind all around here, and I'll put my foot here and MF
> this and MF that. . . .  It was all fabricated just to get rid of me.  It was all personal.

*Id.* at 81:13-82:7.  Plaintiff admits that the argument got "a little loud . . . He raised his voice a

little and I raised my voice a little," but maintains that he never threatened Mr. Williams.  *Id.* at

84:3-17; 89:11-90:9.  Plaintiff testified that before terminating Plaintiff, Ms. Fooks investigated

the incident by discussing it with Plaintiff, Mr. Williams, and other witnesses.  *Id.* at 48:10-

50:10; 90:10-91:17.  During his deposition, Plaintiff testified that the incident with Mr. Williams

was one of the key reasons for his termination.  According to Plaintiff, immediately following the

5

incident, Mr. Williams "told the entire crew that if I wasn't out of there by the end of the day, he

was going to quit. And I believe that also put pressure on the manager because [Mr. Williams

was] the chief engineer." *Id.* at 18:4-18; Def.'s Stmt. ¶ 5.

In addition, Plaintiff testified that he had an intimate relationship with Ms. Fooks, which

ended three months prior to Plaintiff's termination when Plaintiff questioned Ms. Fooks'

authority in front of other people at a staff meeting. Def.'s Stmt. ¶ 8; Davis Dep. Tr. at 46:5-

48:9. According to Plaintiff, Ms. Fooks quit her job following that staff meeting, but returned to

work the next week. Def.'s Stmt. ¶ 8; Davis Dep. Tr. at 46:5-48:9. Nevertheless, Plaintiff

testified that

> It was very uncomfortable having me around because some of the maintenance
> techs and things -- she had questioned how she would be able to discipline me
> with our relationship. When our relationship ended, I believe that it made her
> very, very uncomfortable which may not have been the primary reason that she
> fired me, but I think that that has a lot to do with her decision.

*Id.* at 48:2-9.

Thus, according to Plaintiff's own deposition testimony, Mr. Williams and Ms. Fooks

fired him "for their own personal reason. It had nothing to do with the betterment of the

company. It was because both of them were uncomfortable having me around." *Id.* at 82:12-15.

Specifically, Plaintiff testified that he was terminated because Ms. Fooks was uncomfortable

working with him following their break up, *id.* at 65:12-17, and that Mr. Williams claimed that

Plaintiff threatened him during the July 3, 2003 incident "because he wanted to get rid of me, and

he couldn't do it with my job performance," *id.* at 84:12-21.

C.    *Other Alleged Causes for Plaintiff's Termination*

During his deposition, Plaintiff identified five reasons for his termination, including (1)

6

his 1999 EEOC charge, *id.* at 13:13-15, and (2) the July 3, 2003 incident with Mr. Williams, *id.* at 18:4-19:6. Plaintiff also identified another three reasons for his termination: (3) his internal complaints about exposure to hazardous materials, *id.* at 13:17-14:8; (4) his calls to OSHA regarding exposure to hazardous materials, *id.* at 14:19-15:8; and (5) his filing of "charges" with the Wage and Hour Division of the Department of Labor, *id.* at 14:9-18.

Plaintiff's Complaint alleges that during his employment he "voiced [his] concerns about the safety factor involving maintenance techs working on boilers without training or licensing" and "about [his] exposure to hazardous materials (i.e. asbestos) without the benefit of training or protective covering." Compl. at 1-2. According to Plaintiff, he spent approximately 75% of his working day behind walls and in ceilings that contained asbestos. *Id.* During his deposition, Plaintiff testified that he and other members of the maintenance crew made internal oral complaints to Mr. Williams and Ms. Fooks about their exposure to hazardous materials, including asbestos and lead, and requested protective clothing and training. Def.'s Stmt. ¶ 19; Davis Dep. Tr. at 13:16-14:7; 29:21-33:18; 45:1-46:4. In addition, Plaintiff testified that he complained about being asked to work on a boiler without proper training or licensing. *Id.* at 85:18-88:19.

While Plaintiff's Complaint makes a reference to calling OSHA, it does not contain any factual allegations regarding the call. Compl. at 3. During his deposition, Plaintiff testified that he called OSHA twice in one day during late 2003, and complained about his exposure to asbestos and lead. Davis Dep. Tr. at 67:2-8, 16-18. Plaintiff's Complaints were not made in writing, and Plaintiff testified that the gentleman who answered the phone "looked at his file and said, well, we were out there last year or a couple months ago and everything was fine, they

passed the inspection." *Id.* at 14:19-15:2.  Plaintiff does not allege that he informed any member

of Gables management of his alleged OSHA complaint, and there is no evidence that OSHA

contacted Gables or otherwise initiated any investigation in response to Plaintiff's alleged calls.

Def.'s Stmt. ¶ 37.

Finally, during his deposition, Plaintiff testified that he believes he was terminated in part

because he called the Wage and Hour Division of the Department of Labor to complain about

payment for on-call time and Gables' alleged practice of allowing employees to take time off as

compensation for overtime work, rather than paying employees overtime.  Davis Dep. Tr. at

14:9-18; 55:2-8, 57:7-58:14.  While Plaintiff's Complaint does not include any references to this

call, it appears to have been made on or about January 14, 2003, six months prior to Plaintiff's

termination.  Def.'s Stmt. ¶ 28; Davis Dep. Tr. at 61:2-14.  Plaintiff testified that he was told his

complaint would be investigated, and that the next day he was told that the Wage and Hour

Division had called Gables and determined that the company was "within their rights."  *Id.* at

59:11-60:5.  Plaintiff does not assert that any member of Gables' management knew of his phone

call to the Wage and Hour Division.  Def.'s Stmt. ¶ 29.   During his deposition, Plaintiff testified

that Gables changed its practice regarding on-call time in response to one of Plaintiff's

complaints; however, Plaintiff did not specify whether the complaint was internal or one made to

the Wage and Hour Division.  Davis Dep. Tr. at 58:

Also during his deposition, Plaintiff was specifically asked whether any member of

Gables management said anything to him that led him to conclude his termination was connected

to his call to the Wage and Hour Division.  *Id.* at 62:12-15.  Plaintiff responded:

There was an offhand remark.  It wasn't direct.  When I made a complaint to Mr.

> Williams once, he asked me, listen, do you want to work here?  If you're not
> happy working here . . . we can remedy that or something to that effect which, to
> me, was saying if you don't stop, we're going to fire you.

*Id.* at 16-21.  When pressed on whether Mr. Williams' remark referred to Plaintiff's Wage and

Hour Division complaint as opposed to his internal complaints, Plaintiff responded: "No, I was

considered by Mr. Williams and most of the managers as a trouble maker because I made

complaints about things . . . Everything I complained about was illegal.  It was just that I wasn't

considered what they call a team player."  *Id.* at 62:22-63:14.

> D.    *Procedural History*

On July 21, 2003, Plaintiff completed and filed an EEOC Charge Questionnaire, stating

that he had been retaliated against "[f]or past charges filed in 2000, also for questioning safety,

i.e., working with asbestos without any protection, unsafe electrical wiring - on-call pay."  Def.'s

Mot. for Summ. J., Ex. 2 (7/21/03 EEOC Chg. Quest.).  During his deposition, Plaintiff testified

that the Charge Questionnaire did not lead to an EEOC Charge of Discrimination because the

EEOC "said that it was not in their realm.  It was not discrimination.  If anything, it was wrongful

termination."  Davis Dep. Tr. at 42:1-4.  Plaintiff also testified that the EEOC told him that "after

two and a half years, they couldn't handle it for retaliation because it was too long a period had

lapsed."  *Id.* at 43:1-7.  According to Plaintiff, also in 2003, the EEOC gave him "a letter and it

was something like . . . not a right to sue, I don't know the exact words – but they said I could

sue in court and that's my next step."  *Id.* at 43:11-22.  Plaintiff does not have a copy of the letter,

but recalled that it said he had two years from the date of the allegedly discriminatory incident in

which to file suit.  *Id.* at 44:7-13.

Plaintiff filed his Complaint in this action on July 7, 2005.  Following discovery,

Defendant filed its Revised Motion for Summary Judgment on July 24, 2007.  On August 2, 2007, in compliance with *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988) and *Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992), the Court issued an Order advising Plaintiff of the consequences of failing to respond to Defendant's Revised Motion for Summary Judgment, setting a due date of September 4, 2007 for Plaintiff's Opposition, and specifically explaining the manner in which Plaintiff was to respond to Defendant's motion.  *See* Order, Docket No. [37], Aug. 2, 2007. Plaintiff filed a Motion for Extension of Time to respond to Defendant's motion on August 30, 2007.  On September 6, 2007, the Court held a Status Conference in this matter, at which Plaintiff and counsel for Defendant appeared.  During that Status Conference, Plaintiff indicated that he intended to respond to Defendant's motion for summary judgment, and agreed to do so by October 12, 2007.

Plaintiff did not do so, however, and on October 22, 2007, Defendant filed a Request for Ruling on Motion for Summary Judgment and Entry of Judgment.  On November 15, 2007, the Court received a letter notice from Plaintiff, dated November 7, 2007, in which he indicates that he is unable to respond to Defendant's motion because he lacks the expertise to do so, and does not have the resources to hire an attorney.  Plaintiff requests that the court "deny the Defendant's request for a summary judgment and allow [Plaintiff] the opportunity to prove [his] case in court."  *See* Notice, Docket No. [42], Nov. 15, 2007.  Although Plaintiff's letter clearly establishes that he opposes Defendant's Revised Motion for Summary Judgment, Plaintiff has not filed a substantive response to that motion, and apparently does not intend to do so.  The Court therefore considers Defendant's Revised Motion for Summary Judgment ripe for review.

## II.  LEGAL STANDARDS

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty*

11

*Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

Importantly, "[w]hile summary judgment must be approached with specific caution in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Morgan v. Fed. Home Loan Mortgage Corp.*, 172 F. Supp. 2d 98, 104 (D.D.C. 2001) (quoting *Calhoun v. Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. Mar. 31, 1998) (internal citation omitted), *aff'd*, No. 99-5126, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 2000)); *see also Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (special caution "does not eliminate the use of summary judgment in discrimination cases") (citing cases). "Summary judgment is not a 'disfavored procedural shortcut,' but is an integral procedural tool which promotes the speedy and inexpensive resolution of every case." *Marshall*, 276 F. Supp. 2d at 47 (quoting *Celotex Corp.*, 477 U.S. at 327). Accordingly, the Court reviews the defendant's motion for summary judgment under a "heightened standard" that reflects "special caution." *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879 (D.C. Cir. 1997) (internal quotations omitted),

*overturned on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc).  Nonetheless, while this special standard is more exacting, it is not inherently preclusive.  Although more circumspect, the Court will continue to grant a motion for summary judgment in which the nonmoving party has failed to submit evidence that creates a genuine factual dispute and the moving party is entitled to a judgment as a matter of law.

### III.  DISCUSSION

Although Plaintiff's Complaint does not specifically identify legal grounds or delineate causes of action, Defendant's motion for summary judgment analyzes Plaintiff's Complaint as asserting a retaliation claim under Title VII, as well as a wrongful discharge claim pursuant to District of Columbia common law.  In the absence of any indication that Plaintiff intended to assert other claims, the Court shall address each claim identified by Defendant in turn.

A.    *Plaintiff's Title VII Retaliation Claim*

Plaintiff's Complaint alleges only that he believes that his termination was partially motivated by retaliation for his successful pursuit of his 1999 EEOC charge.  Compl. at 3.  The record does not identify the basis for Plaintiff's 1999 EEOC charge.  Nevertheless, because Defendant assumes that Plaintiff's claim alleges retaliation for previous activities protected under Title VII, the Court makes that assumption as well.  Defendant argues that Plaintiff's Title VII claim is time-barred because Plaintiff did not file an EEOC Charge of Discrimination.  In addition, while not explicitly arguing so, Defendant suggests that it is entitled to summary judgment on Plaintiff's Title VII claim because Plaintiff cannot establish a causal connection between his 1999 EEOC Charge and his termination in July 2003 and because there was a legitimate, non-retaliatory reason for Plaintiff's termination.

13

### 1.    *Title VII's Administrative Filing Requirements*

"Title VII requires that a person complaining of a violation file an administrative charge

with the EEOC and allow the agency time to act on the charge." *Park v. Howard Univ.*, 71 F.3d

904, 907 (D.C. Cir. 1995).  This enforcement scheme is not a jurisdictional prerequisite to a

lawsuit in federal court, but essentially functions as a statute of limitations for Title VII actions,

which encourages the prompt processing of charges and protects employers from having to

defend stale charges. *Carter v. Washington Metro. Area Transit Auth.*, 503 F.3d 143, 145 (D.C.

Cir. 2007) (quoting *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S.---, 127 S. Ct. 2162,

2170-71 (2007) and *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).  Pursuant to

42 U.S.C. § 2000e-5(e)(1), an individual must file a charge with the EEOC within 180 days of

the alleged unlawful employment practice, or, if the individual first seeks redress with a state or

local authority (including the District of Columbia Office of Human Rights ("DCOHR")), the

charge may be filed within 300 days of the alleged violation.  42 U.S.C. § 2000e-5(e)(1); *Palmer

v. Barry*, 894 F. 2d 449, 451 n.2 (D.C. Cir. 1990) (the "District of Columbia is a deferral

jurisdiction for purposes of processing discrimination complaints.").

Defendant argues that Plaintiff's Title VII retaliation claim is time-barred because he

never filed an EEOC Charge of Discrimination or brought a charge with the DCOHR.  Defendant

is correct that Plaintiff never filed a document entitled "Charge of Discrimination" with the

EEOC; indeed, Plaintiff admitted as much during his deposition.  *See* Davis Dep. Tr. at 41:19-

42:4.  However, the record is also clear that Plaintiff filed a document entitled "Charge

Questionnaire" with the EEOC on July 21, 2004, just fourteen days after his termination.

*See* Def.'s Mot. for Summ. J.; Ex. 2. (7/21/03 EEOC Chg. Quest.).  Plaintiff's Charge

Questionnaire states that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the [EEOC] will . . . consider it to be a sufficient charge of discrimination under the relevant statute(s)." *Id.*  Plaintiff's Charge Questionnaire also includes his name and contact information, identifies Marbury Plaza as Plaintiff's employer, and contains Plaintiff's handwritten statement that he was terminated in retaliation for his previous EEOC charge.[2]

The D.C. Circuit has considered such a Charge Questionnaire to be a sufficient charge of discrimination for purposes of Title VII, albeit in a case where the employer had express notice of the plaintiff's claims of discrimination.  *See Carter*, 503 F.3d 143.  Moreover, the Court notes that on November 6, 2007, the Supreme Court heard oral arguments in *Federal Express Corporation v. Holowecki*, a case in which the Second Circuit concluded that an EEOC Intake Questionnaire and accompanying affidavit constituted a charge of discrimination, even though the EEOC never notified the employer of the plaintiff's claims.  *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558 (2006), *cert. granted*, 127 S. Ct. 2914 (2007).  As such, the Court declines to determine whether Plaintiff's EEOC Charge Questionnaire constituted a sufficient charge of discrimination for purposes of Title VII's filing requirements.  The Court need not do so because,

---

[2] The EEOC's interpreting regulations specify the information that must be included in a "charge" of discrimination under Title VII, including that the charge must be in writing and be signed.  *See* 29 C.F.R. § 1601.9.  In addition, the EEOC's regulations provide that a charge should include the full name, address and telephone number of the person making the charge, and the full name and address of the person against whom the charge is made, as well as a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices."  *See id.* § 1601.12.  In addition, however, the regulations provide that a "charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  *Id.*

even if Plaintiff's Charge Questionnaire is construed as a charge of discrimination, it appears that Plaintiff's Complaint would nevertheless be time-barred. Plaintiff admitted during his deposition that he received a letter from the EEOC in 2003 saying that he could file suit in court. Davis Dep. Tr. at 43:11-22. Plaintiff was not clear on whether the letter he received was a "right to sue" letter, and recalled that the letter told him he had two years within which to bring suit. *Id.* at 43:14-44:16. Nevertheless, because Plaintiff admits that he received a letter in 2003 from the EEOC advising him that he could proceed in Court, it appears that he was required to bring suit within ninety days of that letter under 42 U.S.C. § 2000e-5(f)(1). Plaintiff filed his Complaint in this action on July 7, 2005, a date which is clearly more than ninety days after he received a letter advising him of his ability to do so.

Moreover, as discussed below, even assuming *arguendo* that Plaintiff had timely filed this action, Defendant would nevertheless be entitled to summary judgment on the merits of Plaintiff's Title VII retaliation claim.

### 2.      *Proper Standards for Retaliation Claim*

Claims of retaliation under Title VII are governed by the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Carney v. Am. Univ.*, 151 F.3d 1090, 1094 (D.C. Cir. 1998) (citing *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984)). It is the district court's responsibility to closely adhere to this analysis and go no further, as it does not sit as a "super-personnel department that reexamines an entity's business decisions." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (internal citation and quotation marks omitted). Under the *McDonnell Douglas* paradigm, Plaintiff has the initial burden of proving by a preponderance of the evidence a "*prima facie*" case of retaliation.

16

*McDonnell Douglas*, 411 U.S. at 802.  If Plaintiff succeeds in establishing a prima facie case, the

burden shifts to the Defendant to articulate some legitimate, non-retaliatory reason for Plaintiff's

termination, and to produce credible evidence supporting its claim.  *Id.*  Defendant's burden is

only one of production, and it "need not persuade the court that it was actually motivated by the

proffered reasons."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see also*

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) ("[T]he determination that a defendant

has met its burden of production (and has thus rebutted any legal presumption of intentional

[retaliation]) can involve no credibility assessment.").  As such, while "the *McDonnell Douglas*

framework shifts intermediate evidentiary burdens between the parties, [t]he ultimate burden of

persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff

remains at all times with the plaintiff."  *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d

647, 651 (D.C. Cir. 2003); *see also Burdine*, 450 U.S. at 253.

      If Defendant is successful, then "the *McDonnell Douglas* framework -- with its

presumptions and burdens -- disappear[s], and the sole remaining issue [is] [retaliation] *vel non*."

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (internal citations and

quotation marks omitted).  At that point, Plaintiff has the burden of persuasion to show that

defendant's proffered reason was not the true reason for the employment decision.  *Burdine*, 450

U.S. at 256.  Pretext may be established "directly by persuading the court that a [retaliatory]

reason more likely motivated the employer or indirectly by showing that the employer's proffered

explanation is unworthy of credence."  *Id.* at 256; *see also Reeves*, 530 U.S. at 143.  "At this

stage, if [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to

conclude that [defendant's] proffered reason was a pretext for [retaliation], summary judgment

must be entered against [plaintiff]." *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 27-28

(D.C. Cir. 1997).

### 3.    *Application to Plaintiff's Title VII Retaliation Claim*

As Plaintiff proffers no direct evidence whatsoever that he was terminated in retaliation

for his 1999 EEOC charge, the *McDonnell Douglas* framework applies.  *See* Davis Dep. Tr. at

38:11-18.  Plaintiff makes out a prima facie case of retaliation by showing that (1) he engaged in

statutorily protected activity; (2) his employer took an adverse personnel action against him; and

(3) a causal connection exists between the two.  *Carney*, 151 F.3d at 1095 (citing *Mitchell v.*

*Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985)).  "An activity is 'protected' for the purposes of a

retaliation claim 'if it involves opposing alleged discriminatory treatment by the employer or

participating in legal efforts against the alleged treatment.'" *Lemmons v. Georgetown Univ.*

*Hosp.*, 431 F. Supp. 2d 76, 91 (D.D.C. 2006) (quoting *Coleman v. Potomac Elec. Power Co.*,

422 F. Supp. 2d 209, 212-13 (D.D.C. 2006)).  Here, Plaintiff alleges–and testified during his

deposition–that he filed an EEOC charge against H.G. Smithy regarding his 1999 termination,

and that his charge was resolved by mediation in February 2000.  As Plaintiff's termination

clearly constitutes an adverse employment action, Plaintiff easily meets the first two

requirements of a prima facie case.

However, Plaintiff's Complaint and deposition testimony are less successful in

demonstrating a causal connection between Plaintiff's 1999 EEOC charge and his July 2003

termination.  "The causal connection component of the prima facie case may be established by

showing that the employer had knowledge of the employee's protected activity, and that the

adverse personnel action took place shortly after that activity." *Carney*, 151 F.3d at 1095 (citing

*Mitchell*, 759 F.2d at 86). Defendant highlights the fact that both Ms. Fooks and Mr.

Williams–the two individuals that Plaintiff alleges were directly involved in the decision to

terminate him in July 2003–began working at Marbury Plaza well after Plaintiff filed his 1999

EEOC charge. *See* Def.'s Stmt. ¶¶ 6, 9, 13. Defendant also notes that the individual who fired

Plaintiff in 1999, Mr. Jurney, was not retained by Gables when it took over management of

Marbury Plaza. *Id.* ¶ 11. Furthermore, the Court notes that when Plaintiff was terminated in

1999, he was employed by H.G. Smithy, rather than Gables, the Defendant in this action. While

Plaintiff testified during his deposition that "the same people where were there in 2000, even

though Gables had taken the property over, they were still the management," Davis Dep. Tr. at

34:1-4, the fact that Ms. Fooks and Mr. Williams could not have been involved in Plaintiff's

previous termination or EEOC charge certainly weakens the potential for a causal connection

between that EEOC charge and his July 2003 termination.

Furthermore, the "cases that accept mere temporal proximity between an employer's

knowledge of a protected activity and an adverse employment action as sufficient evidence of

causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very

close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (quoting *O'Neal v.*

*Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) and citing *Richmond v. ONEOK,*

*Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient) and *Hughes v. Derwinski*,

967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient)). Here, Plaintiff alleges

that he was terminated in July 2003 in retaliation for an EEOC charge that was resolved in

February 2000–more than three years earlier. Based on the combination of this extended period

of time between Plaintiff's prior EEOC charge and his termination, and the lack of common

19

decision-makers, it is unclear that Plaintiff can demonstrate the requisite causal connection for a prima facie case of retaliation.

Even if Plaintiff could do so, however, Plaintiff himself admits that Defendant had a non-retaliatory reason for terminating him in July 2003. Specifically, Plaintiff asserts that he was fired because both Ms. Fooks and Mr. Williams were uncomfortable working with him, and because Mr. Williams threatened to quit if Plaintiff was not fired following the July 3, 2003 incident. Davis Dep. Tr. at 18:4-18, 48:2-9, 65:12-17, 82:12-15, 84:12-21. Plaintiff's own testimony thus supplies Defendant with evidence of a legitimate, non-retaliatory reason for his termination: that Ms. Fooks and Mr. Williams opted to terminate an at-will employee rather than continue an uncomfortable working situation. While Defendant "need not persuade the court that it was actually motivated by the proffered reasons," it is significant that in this instance Plaintiff himself believes Defendant was motivated–at least in part–by this non-retaliatory reason. *Burdine*, 450 U.S. at 254. The Court therefore has no basis on which to question the legitimacy of Defendant's proffered non-discriminatory reason for Plaintiff's termination. Furthermore, because Plaintiff has not filed a substantive opposition to Defendant's motion for summary judgment, the Court has no evidence from which to conclude that this non-retaliatory reason is purely pretextual. In light of Plaintiff's questionable prima facie case and his inability to demonstrate that Defendant's legitimate non-retaliatory reason for his termination is pretext, the Court concludes that summary judgment must be entered against Plaintiff on his Title VII claim. *See Paquin*, 119 F.3d at 27-28.

B. *Plaintiff's Wrongful Discharge Claim*

"Wrongful discharge" in the District of Columbia has three distinct usages. In one,

20

wrongful discharge is identical to breach of contract; discharge is wrongful if it violates

contractual provisions. *See Nickens v. Labor Agency of Metro. Wash.*, 600 A.2d 813, 817 (D.C.

1991). In another, discharge is wrongful because it violates a statute. *See Freas v. Archer Servs.*,

716 A.2d 998, 1000-01 (D.C. 1998); *Thigpen v. Greenpeace, Inc.*, Civ. A. No. 93-7587, 1993

WL 762109 (D.C. Super. Sept. 14, 1993). Finally, wrongful discharge may refer to the fact that

an "employer engages in tortious conduct when it fires an at-will employee for that employee's

refusal to break the law at the employer's direction." *See Adams v. George W. Cochran & Co.,

Inc.*, 597 A.2d 28, 30 (D.C. 1991); s*ee also Freas*, 716 A.2d at 1000. This tort, created to serve

public policy, has been extended (with restrictive conditions) to protect "whistleblowers" from

adverse personnel actions. *See Carl v. Children's Hosp.*, 702 A.2d 159, 159-61 (D.C. 1997) (*en

banc*); *see also Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 6-11 (D.D.C. 2002) (discussing

*Carl*). The first two meanings of wrongful discharge have no application to the instant case

because Plaintiff was an at-will employee and does not allege that his termination violated any

particular statute. Moreover, to the extent that Plaintiff's Complaint may be read to suggest a

claim that his termination violated Title VII or the District of Columbia Human Rights Act

("DCHRA"), that claim fails for the reasons discussed above.[3]

As such, Plaintiff's wrongful discharge claim can only allege that his termination was

wrongful because it was in violation of public policy. In general, under District of Columbia

law, "an employer may discharge an at-will employee at any time and for any reason, or for no

reason at all." *Adams*, 597 A.2d at 30 (citations omitted). In *Adams*, the District of Columbia

---

[3] Retaliation claims brought under the DCHRA are evaluated pursuant to the *McDonnell Douglas* framework and guided by Title VII retaliation case law. *See Howard Univ. v. Green*, 652 A.2d 41, 44-45 (D.C. 1994).

Court of Appeals articulated a "very narrow exception" to this rule, allowing a discharged at-will employee to sue his former employer "when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." *Id.* at 34. In such an action, the employee bears the burden of proving by a preponderance of the evidence that his refusal to violate the law was the sole reason for his discharge. *Id.* Here, it is clear that Plaintiff's allegations do not fall within the narrow exception created in *Adams*, because Plaintiff does not allege that he was ever asked to break the law, that he was threatened with discipline if he refused to do so, or that he actually refused to do so. *See Liberatore v. Melville Corp.*, 168 F.3d 1326, 1329 (D.C. Cir. 1999) (Under *Adams*, "[a] cause of action for wrongful discharge would lie only where the employee refuses to violate a specific law and the employer puts to the employee the choice of breaking the law or losing his job.").

Although *Carl* held that the *Adams* exception might be extended to cover other public policy exceptions to the general rule of at-will employment, *see* 702 A.2d at 160, "[w]hether a discharge violates public policy is determined on a case-by-case basis, guided by the concept that a wrongful termination cause of action must be 'firmly anchored in either the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon." *Bowie v. Gonzales*, 433 F. Supp. 2d 24, 30 (D.D.C. 2006) (quoting *Warren v. Coastal Int'l Secs., Inc.*, 96 Fed. Appx. 722, 722-23 (D.C. Cir. 2004)). Furthermore, "there must be a close fit between the policy [] declared and the conduct at issue in the allegedly wrongful termination." *Bowie*, 433 F. Supp. 2d at 30 (quoting *Warren*, 86 Fed. Appx. at 722-23).

In his Complaint and deposition testimony, Plaintiff alleges that he was terminated because, *inter alia*, he voiced internal complaints about exposure to hazardous materials and

improper training regarding operating the boiler, he called the Wage and Hour Division regarding

on-call pay and overtime pay, and he called OSHA regarding his exposure to hazardous

materials.  Plaintiff's wrongful discharge claim is deficient, however, because it does not identify

any public policy purportedly violated by his termination.  While Defendant goes to great lengths

to demonstrate that Plaintiff cannot pursue an action for wrongful discharge based on various

statutes, *see* Def.'s Mot. for Summ. J. at 26-29, such effort is ultimately unnecessary because in

the absence of any identified public policy, the Court clearly cannot concluded that the public

policy relied upon is "firmly anchored" in the Constitution or a statute or regulation.  *Bowie*, 433

F. Supp. 2d at 30.  Absent such a showing, Plaintiff cannot prevail on a claim under the very

narrow public policy exception to the ordinary rule of at-will employment in the District of

Columbia.  *Adams*, 597 A.2d at 30, 34; *Carl*, 702 A.2d at 160.

Moreover, even assuming *arguendo* that Plaintiff could identify a clear public policy

violated by his termination, and could show a "close fit" between the policy and his conduct,

*Bowie*, 433 F. Supp. 2d at 30, Plaintiff's wrongful discharge claim would fail because Plaintiff

does not allege that he was "discharged solely, or even substantially" for voicing his internal and

external complaints, *see Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 886

(D.C. 1998).  As discussed above, Plaintiff alleges that he and other members of the maintenance

crew made oral complaints to Mr. Williams and Ms. Fooks regarding their exposure to hazardous

materials, and that he was considered a "trouble maker because [he] made complaints about

things."  Davis Dep. Tr. at 13:16-14:7; 29:21-33:18; 45:1-46:4, 63:3-14; 85:18-88:19.  However,

Plaintiff also testified that he was retained for five years, despite the fact that he raised such

complaints throughout his employment, because he was a good employee, and that he was

23

eventually terminated mainly because Ms. Fooks and Mr. Williams did not want to work with him. *Id.* at 64:6-65:19. It is thus clear from Plaintiff's testimony that he does not consider his internal complaints to be the sole, or even substantial, reason for his termination. *Wallace*, 715 A.2d at 886.

As for Plaintiff's calls to OSHA and the Wage and Hour Division, Plaintiff does not allege that any member of Gables management was aware of either call, and there is no record evidence to that effect. Def.'s Stmt. ¶¶ 29, 37. In the absence of any evidence linking Plaintiff's calls to OSHA and the Wage and Hour Division to his termination, Plaintiff cannot establish that either call was a reason for his termination, let alone the sole or substantial reason. Ultimately, as discussed above, Plaintiff himself asserts that he was terminated, at least in part, because both Ms. Fooks and Mr. Williams were uncomfortable working with him, and because Mr. Williams threatened to quit if Plaintiff was not fired following the incident on July 3, 2003. Davis Dep. Tr. at 18:4-18, 48:2-9, 65:12-17, 82:12-15, 84:12-21. During his deposition, Plaintiff questioned whether the doctrine of at-will employment permitted Ms. Fooks to terminate Plaintiff because she and Mr. Williams were "uncomfortable having me around." Davis Dep. Tr. at 82:6-18. The District of Columbia Court of Appeals has directly answered Plaintiff's question, stating that "the narrow exceptions to the 'employment-at-will' doctrine which [were] recognized in *Adams* and *Carl* were not designed to prevent an employer from terminating an at-will employee in order to eliminate unacceptable internal conflict and turmoil." *Wallace*, 715 A.2d at 886. Plaintiff's own assertion that he was terminated because Mr. Williams and Ms. Fooks were uncomfortable working with him thus forecloses any question of material fact as to whether he was terminated solely, or even substantially, for voicing his internal and external complaints. As such, the Court

concludes that Defendant is entitled to judgment as a matter of law on Plaintiff's claim for wrongful discharge in violation of public policy.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall grant Defendant's [36] Revised Motion for Summary Judgment, and shall dismiss this case in its entirety.  An appropriate Order accompanies this Memorandum Opinion.

Date:   November 29, 2007

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Copy to:

William T. Davis
3501 Pacific Avenue
Apartment #89
Atlantic City, NJ 08401